**UNITED STATES, Appellee,**

v.

**Staff Sergeant Donald M. SMITH, 587–74–4909, United States Army Appellant.**

**CM 448913.**

U.S. Army Court of Military Review.

31 July 1987.

For appellant: Captain Kevin T. Lonergan, JAGC (argued), Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Kathleen A. Vanderboom, JAGC (on brief).

For appellee: Captain Eva M. Novak, JAGC (argued), Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Denise K. Vowell, JAGC (on brief).

Before RABY, CARMICHAEL, and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT

CARMICHAEL, Judge:

Appellant was charged with the premeditated murder of his wife in violation of Article 118, Uniform Code of Military Jus-

tice, 10 U.S.C. sec. 918 (1982) [hereinafter UCMJ]. His case was referred for trial by a general court-martial as noncapital. Contrary to his plea, an officer and enlisted court found appellant guilty of premeditated murder. He was sentenced by the court members to confinement for life as required by statute, forfeiture of one-half his pay per month for life, and reduction to the grade of Private E–1. The convening authority approved the sentence.

Two assignments of error have been made by appellant, one of which was heard by this court in oral argument. In the latter assignment, appellant contends that the military judge erred by not allowing him to inform the court members during voir dire that a conviction of premeditated murder mandated a punishment of confinement for life. The remaining assignment of error which was not argued—that the evidence of record was insufficient to sustain appellant's conviction of premeditated murder—is without merit and does not warrant discussion. We are satisfied that the admissible evidence of record is sufficient to establish appellant's guilt beyond a reasonable doubt.

Appellant asserts that he should have been allowed to inform the members during voir dire that the minimum period of confinement in the event he was convicted of premeditated murder was confinement for life. At trial, defense counsel mentioned several reasons why he should be allowed to then inform the members. One was "court member" nullification, that is, the members might refuse to find appellant guilty of premeditated murder once they knew that such a finding would by law preclude them from determining what period of confinement should be adjudged. A second reason was to gather knowledge of the members' sentencing philosophy to assist appellant in intelligently exercising challenges for cause. During oral argument, appellate defense counsel linked this second reason to the limited peremptory challenge right of a military accused rather than continuing to focus solely on the need to develop information to assist in exercising challenges for cause. The essence of appellate defense counsel's argument was

that since an accused normally has only one peremptory challenge in a court-martial, defense counsel must be given the broadest possible latitude by the military judge to assure that no member's sentencing philosophy is tainted by a preconceived bias. A third reason advanced at trial for being allowed to impart this information to the court members was to impress upon them the gravity of their responsibility. The military judge subsequently ruled that no mention of the minimum sentence could be made to the court members during the prefindings stage of the trial.

At the outset let us make one point clear. Although we recognize the diversity of opinion that exists among federal and state courts on this issue, we do not accept that jury or "court member" nullification is in any way to be encouraged or condoned by jurists in military trial practice.

The examination of court members or "voir dire" may be personally conducted by the military judge or he may permit counsel to question the members. Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial [hereinafter R.C.M.] 912(d). The discussion of subsection (d) of R.C.M. 912 plainly states that "[t]he opportunity for voir dire should be used to obtain information for the intelligent exercise of challenges." R.C.M. 912(d) discussion. Thus, we believe the standard for measuring the legitimacy of voir dire is a question's relevance in the context of laying a foundation for possible challenges. *See ABA Standards, The Defense Function* sec. 4–7.2(c) commentary (2d ed. 1979) (defense lawyer should limit questions to those which are reasonable to assure a fair and impartial jury); R. Holdaway, *Voir Dire—A Neglected Tool of Advocacy,* 40 Mil.L.Rev. 1, 3 (1968) (counsel is "obliged to frame the question so that it appears relevant to a possible challenge"). In reviewing for prejudice a military judge's refusal to allow the defense to ask a question during voir dire, an appellate court, in order to achieve a fair result when applying the relevance standard to a partic-

ular set of facts, must adhere to the following principles in completing its analysis.

■ First, an accused must be allowed that degree of latitude during voir dire which he ·is able to show is reasonably related to making a wise choice in the exercise of a challenge. Second, military judges are vested with broad discretion in deciding whether particular questions must be answered by members during voir dire, and they should be reversed by appellate courts only on a finding of a clear abuse of discretion resulting in prejudice. *United States v. Parker,* 19 C.M.R. 400, 406 (C.M.A.1955). *See United States v. Smart,* 21 M.J. 15, 21 (C.M.A.1985) (Cox, J., concurring) ("I would test court-member qualification on a case-by-case basis and would, almost always, defer to the discretion of the military judge."); R.C.M. 912(d) discussion (nature and scope of examination within military judge's discretion). Third, and finally, the rule of liberality with respect to ruling on challenges for cause cannot be given effect unless it also is applied with respect to the questions allowed on voir dire. *Cf. United States v. Smart,* 21 M.J. at 21 (trial judges must be heedful of a "mandate for liberality in passing on challenges"); *United States v. Moyar,* 24 M.J. 635, 639 (A.C.M.R.1987) ("threshold for clear abuse of discretion in denying challenge for cause is lower"). However, the rule of liberality is accompanied by a caveat. It is only to be applied where there is a reasonable doubt as to the propriety of a question, not where a question clearly is improper on its face and counsel's efforts to bring it within the bounds of propriety prove unsuccessful.

■ In the case at bar, we find nothing in the record which would legitimize trial defense counsel's desire to inform the court members of the mandatory punishment. Civilian counsel, in requesting permission to so advise the members during voir dire, expressly stated that his purpose was not to remove a member, but simply to place all members on notice of their responsibility. After ascertaining that the trial counsel opposed the defense request and hearing argument by both sides, the military judge ruled that the members were not to be informed of the mandatory life sentence either during voir dire or pre-findings arguments. He did state, however, that he would inform the members that the case had been referred for trial as noncapital. Thereafter, a comprehensive voir dire was conducted with questions by the military judge, the trial counsel, and the defense. Of the nine court members who were present at trial, five were questioned individually by the defense. Three of the five who were questioned individually were challenged for cause by the defense and all challenges were granted. A fourth court member was removed when the defense exercised its peremptory challenge. Since the government did not initiate a challenge, the court-martial was left with five members—the minimum required for jurisdiction.

■ Voir dire is part of the procedure whereby counsel determines whether to challenge a member, and the inquiries that counsel propose to make during voir dire must be relevant to the exercise of such challenges. In courts-martial, Congress has decided that an accused convicted of premeditated murder shall receive mandatory confinement for life. We are not persuaded that this information would be relevant to members prior to findings, other than to achieve jury nullification. During the pre-findings stage of a court-martial, the members' sole concern should be whether the prosecution has carried its burden of proving the accused's guilt beyond a reasonable doubt by legal and competent evidence. They should convict if the prosecution has carried its burden of proof as to the offense charged or to any lesser included offense; otherwise, they should acquit. Unless they find the accused guilty of some offense, sentencing considerations are of no import. To the extent that a court member is thinking about the severity of a sentence before findings, his attention is diverted from the task at hand and the accused's right to a fair trial suffers.

We find the defense's attempt to inform the court members of the mandatory confinement bore no relevance to possible chal-

lenges, and thus the military judge properly acted to prevent the disclosure of this information. Further, under the circumstances of this case, the defense was allowed broad discretion in examining the members for bias on findings and sentencing. For example, the defense was permitted to explore whether members believed the taking of a life in and of itself, regardless of circumstances, warranted a severe penalty. As for the mandate for liberality in allowing questions and passing on challenges during voir dire, it was given full effect by the military judge in the instant case. Since appellant's counsel was unable to relate a member's knowledge of the mandatory sentencing statute to the challenging procedure, we find no abuse of discretion.

We, of course, are mindful of the Court of Military Appeals' decision in *United States v. Jefferson*, 22 M.J. 315 (C.M.A. 1986). In that case, the military judge restricted defense counsel's closing argument on findings at the request of the trial counsel. He did so by directing the defense counsel not to inform the members in argument that the minimum sentence for a felony-murder conviction was life imprisonment. Chief Judge Everett, writing for the Court, stated "[t]o the extent that such an argument may impress on the members the seriousness of their decision on findings, it is not inappropriate. *See State v. Walters*, 294 N.C. 311, 240 S.E.2d 628, 630 (1978)." *Jefferson*, 22 M.J. at 329.[1]

We believe that Chief Judge Everett's statement in *Jefferson* was intended to signal that no *per se* rule exists in military law against informing court members of prescribed punishments before findings, and that military judges should not make rulings as if such a rule did exist. It is our opinion, then, that *Jefferson* reaffirms the existing rule in court-martial practice that the military judge is to make a case-by-case determination in the exercise of his sound discretion regarding whether members may be informed of punishments.

While we almost always will defer to the discretionary rulings of a military judge, we do not wish to be misunderstood as favoring a procedure where court members are apprised of punishments on a routine basis. We envision the military judge allowing such a procedure only where, as a requisite, it is shown as necessary to assure that members carry out their duties properly.[2] "The ... [members' function] is to find guilt or innocence on the basis of the legal standards set out in the [j]udge's charge, and the consequence in terms of punishment is ·a matter for Congress on mandatory sentences ...." *United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 60 (1970).

Thus, in the absence of any competent evidence to the contrary, we will presume that officer members, or officer and enlisted members, sitting in judgment on a soldier charged with a crime, responsibly perform their duties individually as well as collectively. *Cf. United States v. Martinez*, 19 M.J. 744, 751 (A.C.M.R.1984), *petition denied*, 21 M.J. 27 (C.M.A.1985) (presumption that military officers perform their duties in a regular manner and in good faith, as well as in compliance with the law). We recognize that court members do at times ignore the rules of law to arrive at a decision that they regard as fair despite being at odds with those same legal principles on which they were instructed. *See, e.g., United States v. Duffy*, 47 C.M.R. 658 (A.C.M.R.1973) (members reconsidered findings of guilty on premeditated murder after learning of a mandatory life sentence). Still, such court member "lawlessness," while it does occur, should not to be

---

1. The North Carolina decision cited by the Chief Judge—*State v. Walters*—was predicated upon a state statute which allows counsel to argue both law and fact to the jury. *See also State v. McMorris*, 290 N.C. 286, 225 S.E.2d 553, 555 (1976). Such argument may include statutorily prescribed punishments for a charged offense. *Walters*, 240 S.E.2d at 630. In military jurisprudence, there is no requirement, statutory or oth-

erwise, that a defense counsel be allowed to inform the members of the prescribed punishment for the offense for which the accused is being tried.

2. In trial by courts-martial, such occurrences should be rare, given the qualifications of court members. *See generally* R.C.M. 502.

encouraged by either trial procedures or the practices of trial participants. A member's compassion for an accused should not be permitted to change or weaken in any manner the legal definition of the offense for which that accused is being tried.

Even assuming *arguendo* that the military judge erred in not permitting defense counsel to advise the members of the mandatory sentence during voir dire, we find that the record amply demonstrates that the members were impressed with the seriousness of their duties. Accordingly, appellant suffered no prejudice. UCMJ art. 59(a), 10 U.S.C. § 859(a).

We have also considered those matters personally asserted by appellant and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge RABY * and Judge ROBBLEE concur.

* Senior Judge Kenneth A. Raby took final action in this case prior to his retirement.