**UNITED STATES**

v.

**Ronald L. TOMPKINS, 265 99 0018, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 88 4177.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 21 April 1988.

Decided 15 Sept. 1989.

---

LT Nicholas Fitzgerald, JAGC, USNR, Appellate Defense Counsel.

LT Rosalyn D. Calbert, JAGC, USNR, Appellate Government Counsel.

Before RILEY, Senior Judge, and McLERAN and HILTON, JJ.

McLERAN, Judge:

Contrary to his pleas, a general court-martial with officer members convicted appellant of being derelict in the performance of his duties in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892, making a false official statement in violation of Article 107, UCMJ, 10 U.S.C. § 907, losing military property through neglect in violation of Article 108, UCMJ, 10 U.S.C. § 908, assaulting by striking a child under the age of 16 on two occasions in violation of Article 128, UCMJ, 10 U.S.C. § 928, and impersonating an officer in violation of Article 134, UCMJ 10 U.S.C. § 934. Appellant plead guilty to failure to go to appointed place of duty in violation of Article 86, UCMJ, 10 U.S.C. § 886, and was found guilty pursuant to his pleas. Appellant was sentenced to a dishonorable discharge, confinement for 2 years, forfeiture of $500.00 pay per month for 2 years, and

reduction to E–1. The convening authority approved only a bad-conduct discharge and the remainder of the sentence as adjudged.

Before this court, appellate defense counsel asserts that the military judge: (1) abused his discretion by denying a defense challenge for cause against Colonel Hooten, and (2) erred by denying a defense motion to suppress appellant's oral statement to Corporal Hutchens made while appellant was attempting to negotiate an administrative discharge in lieu of court-martial. These assignments will be discussed seriatim.

### I. Defense Challenge For Cause Against Colonel Hooten

■ Colonel Hooten was the second most senior officer appointed as a member of the court-martial. He served on the staff of the convening authority and every day read through a reading board containing correspondence addressed to the staff in order to anticipate any questions the Commanding General might have. In this official capacity, Colonel Hooten had seen several pieces of correspondence concerning the appellant. One was from a parent of the appellant, complaining about his treatment and the fact that "they were out to get him." The other one was a letter that appellant wrote inviting the General to his trial. Colonel Hooten believed he might have seen "a couple of Congressional inquiries, I guess impugning the character of one of the witnesses against him." In response to voir dire by the military judge, Colonel Hooten indicated that he had not formed any opinion as to the appellant's guilt or innocence nor as to the credibility of any potential witness in the case, and that he had not seen anything in the correspondence that was of a factual nature. In response to a question by civilian defense counsel, Colonel Hooten responded that he didn't think he would be affected by adverse comments about the Marine Corps which might have been contained in the

correspondence he read. Colonel Hooten was not required to respond to or otherwise take action on any of the correspondence and did not know the General's response to the letters. Nothing he read upset him or would cause him to be anything other than totally impartial in this case.

At the conclusion of voir dire, the trial defense counsel challenged Colonel Hooten for cause. After argument, the challenge was denied. The defense then challenged Colonel Hooten peremptorily, indicating that they would have used their peremptory challenge on another court member had the challenge for cause against Colonel Hooten not been denied.

■ Although challenges for cause should be granted liberally,[1] the military judge's decision is entitled to great deference by appellate courts [2] and should not be disturbed unless that discretion is clearly abused.[3] In view of the rather innocuous nature of the information known to the challenged member in this case and the member's assurance of impartiality, we feel that the military judge did not abuse his discretion in denying the defense challenge for cause.

### II. Defense Motion to Suppress Statements Made to Corporal Hutchens

■ Corporal Hutchens was the word-processing noncommissioned officer in charge of the Joint Law Center, Marine Corps Air Station, Cherry Point, North Carolina; he was responsible for typing the endorsement on appellant's requests for administrative discharge in lieu of courts-martial. He was knowledgeable about administrative discharge procedures generally as a result of his duties, and he had spoken with his Officer in Charge, Captain Hammer, about this particular case. Captain Hammer had some role in processing administrative discharges, and had told Cpl

---

1. *See e.g., United States v. Reynolds,* 23 M.J. 292 (C.M.A.1987); *United States v. Smart,* 21 M.J. 15 (C.M.A.1985).

2. *United States v. Smart,* 21 M.J. 15 (C.M.A. 1985).

3. *United States v. Deain,* 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954).

Hutchens which crimes appellant would have to admit to in order to be eligible for an administrative discharge in lieu of court-martial.

Appellant's first request for administrative discharge in lieu of court-martial, which he had prepared himself, had been returned because he had not admitted committing an offense for which a bad-conduct discharge was authorized. (The participation of the detailed defense counsel at the time was limited to preparation of a forwarding endorsement.) Appellant and Cpl Hutchens had been acquaintances for about one year, and appellant knew what duties Cpl Hutchens performed. In an attempt to ensure that his request would not be rejected again, appellant took it upon himself to seek advice from Cpl Hutchens concerning the wording of the next request for administrative discharge in lieu of court-martial. Even though Captain Hammer had instructed Cpl Hutchens not to talk with appellant because of the pending charges, Cpl Hutchens agreed to talk with appellant and assured appellant that their conversation would be "off the record." The conversation lasted about 45 minutes and took place outside of the building where Cpl Hutchens worked. Approximately four minutes of the conversation concerned the deficiencies of appellant's first request for administrative discharge and what would be required in subsequent requests, approximately 15 minutes dealt with appellant's childhood, and another 15 minutes or so consisted of a discussion of facts relating to the charged offenses. During the conversation, Cpl Hutchens asked appellant what he had done, and although appellant's response contained some exculpatory information, appellant did admit that he had lost the seven messages that were the subject of the charged violation of Article 108, UCMJ, willful destruction of government property. At the end of the conversation appellant said "Thanks," and they shook hands. Cpl Hutchens reported the conversation to Captain Hammer, who in turn told the Corporal that he had a duty to tell Major Seymour.[4]

At trial, Cpl Hutchens was called as a witness by the prosecution and, over a defense motion to suppress, testified as to the admission that appellant had lost the seven messages.

The basis of appellant's assignment of error is twofold: first, that the statements are inadmissible under Military Rules of Evidence (M.R.E.) 410(a)(4), Manual for Courts-Martial, United States, 1984, and second, that the statements are inadmissible because appellant was not warned in accordance with Article 31, UCMJ, 10 U.S.C. § 831.

M.R.E. 410(a)(4) provides that any statement made in the course of plea discussions with the convening authority, staff judge advocate, trial counsel or other counsel for the Government which does not result in a plea of guilty or which results in a plea of guilty later withdrawn is not admissible in any court-martial proceedings against the accused who was a participant in the plea discussions. By definition under M.R.E. 410(b), a "statement made in the course of plea discussions" includes a statement made for the purpose of requesting disposition under an authorized procedure for administrative action in lieu of trial by court-martial.

The Government contends that Cpl Hutchens was neither the convening authority, staff judge advocate, trial counsel or other counsel for the Government in this case, which he obviously was not, and that the rule does not protect statements made to clerks who are not involved in the approval chain of processing such an administrative discharge.

The resolution of this assignment of error obviously depends on the interpretation given to M.R.E. 410(a)(4). We found no cases directly on point, however, the Court of Military Appeals, while discussing the general purpose of M.R.E. 410, noted that, "An excessively formalistic or technical approach to this rule may undermine these policy concerns [to encourage the flow of information during the plea-bargaining process and the resolution of crimi-

4. Presumably Cpl Hutchens was referring to the trial counsel, who was a Major Seymour.

nal charges without "full scale" trials] in the long run."[5] We realize that most pretrial negotiations, be they for pretrial agreements, administrative dispositions, withdrawal or reduction of charges, or whatever, usually take place between defense counsel and a lawyer representing the convening authority. However prudent that approach might be, particularly from the standpoint of the accused, it is not required, except as dictated by ethical considerations which preclude a lawyer from discussing a matter directly with a client of another lawyer without that other lawyer's permission.[6] We know from experience that initial and final negotiations are frequently conducted orally and later reduced to writing, and that non-lawyer legalmen, clerks, typists, secretaries, and even fellow line officers other than the convening authority[7] are participants in those negotiations, either directly as part of discussions or later on when promises made must be reduced to writing. These "extra" participants, that is, those not enumerated in M.R.E. 410(a)(4), play an important part in the plea-bargaining process in the military, and they do participate because the convening authority or staff judge advocate wants them to participate. We believe that statements made or offered during any of these negotiations should not be used against the accused in a subsequent court-martial proceeding simply because the person having access to the information happens not to be one of the enumerated individuals, since to do so would be to impede the plea-bargaining process as it exists.

In this case, the appellant, after being rebuffed in his first attempt to secure an administrative discharge in lieu of court-martial, took it upon himself to find out what he could do to gain the convening authority's favorable consideration of his next effort. He turned to his friend, Corporal Hutchens, who was a clerk in the office where such requests were processed.

As casual as it was, the obvious purpose of the meeting between the two was to discuss the request, even though in the course of the conversation they discussed other topics as well. Without question, Corporal Hutchens should not have discussed the administrative discharge request with appellant in view of the instructions from Captain Hammer; that disobedience, however, is a matter between Captain Hammer and Corporal Hutchens, and does not bear on the outcome of our decision in this case.

■ Consequently, the military judge erred by denying appellant's motion to suppress oral statements to Corporal Hutchens when the statements were made in an attempt to negotiate an administrative discharge in lieu of court-martial. Relief can be granted, however, only if the error materially prejudiced appellant.[8]

The Government brief in reply to the assignment of errors states that the testimony of Corporal Hutchens "inured to the benefit of the appellant because he was found guilty of an offense which carried a lesser punishment." This argument misses the point altogether, since it overlooks the fact that the statements were used by the Government to *convict* the accused of the lesser included offense when without them he might have been found not guilty. Indeed, the only real factual issue concerning the charged offense of destroying government property was whether the property was destroyed or lost willfully or through neglect or by some non-criminal means, and whether the evidence was sufficient to prove guilt of an Article 108, UCMJ, offense beyond a reasonable doubt.

The record of trial contains no evidence that the messages were lost, other than the testimony of Corporal Hutchens. The testimony of Corporal Polly points to willful destruction, of which the members refused to convict. We have little doubt, therefore, that the members' finding of guilt as to the

---

**5.** *United States v. Barunas,* 23 M.J. 71, 76 (C.M.A.1986).

**6.** *See* Navy JAG Instruction 5803.1 (Professional Conduct of Judge Advocates), Enclosure (1), Rule 4.2 (26 October 1987).

**7.** The convening authority's Deputy Commander, Executive Officer, or non-lawyer legal officer may participate in discussions.

**8.** Article 59(a), UCMJ, 10 U.S.C. § 859(a).

lesser included offense of negligently losing government property is based entirely, as to the one element, on the erroneously admitted testimony of Corporal Hutchens. Prejudice to appellant is obvious.

■ The maximum punishment that the members could have awarded for the offenses of which the accused was found guilty was dishonorable discharge, confinement for 11 years, 4 months, total forfeiture of all pay and allowances, and reduction to E-1. The thrust of the sentencing arguments by both prosecution and defense centered upon what could be described as the physical abuse of a child on two occasions. Appellant was also convicted of other discreditable offenses. We feel confident in reassessing the sentence at this level without ordering a rehearing on the sentence.

Accordingly, the finding of guilty of Charge IV and its specification as excepted and substituted is set aside and that charge and specification are dismissed. The remaining findings of guilty are affirmed. Upon reassessment, we affirm the sentence as adjudged and approved on review below. *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

Senior Judge RILEY * and Judge HILTON concur.