UNITED STATES, Appellant and Cross–Appellee,

v.

Earl R. JOBSON, Lietenant Colonel, U.S. Air Force, Appellee and Cross–Appellant.

No. 62,717.
ACM 27310.

U.S. Court of Military Appeals.

Argued Feb. 13, 1990.
Decided Sept. 20, 1990.

For the Accused: *Captain Paul M. Dankovich* (argued); *Colonel Richard F. O'Hair* (on brief).

For the United States: *Captain Joseph V. Treanor III* (argued); *Colonel Joe R. Lamport* and *Captain Morris D. Davis* (on brief); *Colonel Robert E. Giovagnoni* and *Major Terry M. Petrie.*

*Opinion of the Court*

COX, Judge:

At a general court-martial with members, the accused pleaded guilty to committing sodomy with a child under 16 years of age and to engaging in conduct unbecoming an officer by committing indecent acts upon males under the age of 16 years, in violation of Articles 125 and 133, Uniform

Code of Military Justice, 10 USC §§ 925 and 933, respectively. He was sentenced to confinement for 28 years, total forfeitures, and dismissal. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as extended to confinement for 15 years, total forfeitures, and dismissal.

Upon review below, the Court of Military Review determined that the military judge abused his discretion when he denied a challenge for cause of a court member who, by reading a newspaper article prior to trial, learned that there was a pretrial agreement. However, it found that he did not know the terms of the agreement. Despite this determination, that court concluded that the error was harmless. 28 MJ 844 (1989).

The Judge Advocate General of the Air Force certified the following issue to this Court:

WHETHER THE UNITED STATES AIR FORCE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW IN HOLDING THAT THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE DENIED A CHALLENGE FOR CAUSE AGAINST LIEUTENANT COLONEL HARRIS.

The accused cross-petitioned this Court, and we granted review of the following issue:

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED WHEN IT HELD THAT A FORCED USE OF A PEREMPTORY CHALLENGE, PURSUANT TO RCM 912(f)(4), MERELY PRESERVES THE ISSUE BUT DOES NOT CONSTITUTE PREJUDICE.

The accused entered pleas and was found guilty by the military judge on August 8, 1988. The following day the court-martial members sat to determine his sentence. Prior to trial, there was considerable coverage of the offenses by the local news media. In particular, two newspapers—The San Antonio Light and The San Antonio Express–News, featured articles about the accused's pleas. The Light published a story that included the accused's picture and an article stating that "Lt. Col. Carl R. Jobson's plea was part of an agreement limiting the sentence he can be assessed." The Express–News published an article that stated "a pretrial agreement was signed by both sides based on Jobson's guilty plea."

During *voir dire*, two potential members, Lieutenant Colonels Richard G. Hetzel and Michael H. Harris, indicated that they were aware that there was a pretrial agreement because they had read about it in newspaper articles. Defense counsel first questioned Lieutenant Colonel Harris, who testified that he had read The Express–News article. He indicated, however, that he did not know whether the pretrial agreement would have any effect on the maximum punishment the accused could receive.[1]

Defense counsel challenged Lieutenant Colonel Harris for cause on the ground "that no one sitting on the panel should have any knowledge ... that a pretrial agreement exists." The military judge denied the challenge, responding that Lieu-

---

1. The following colloquy took place:
 MJ: All right. The Defense Counsel asked you questions about the article, and you indicated that, although you didn't remember anything that may have been related to the guilty plea, the article does contain something. And what the article says is that there was a pretrial agreement in the case. Do you recall that from reading the article?
 MEM: Yes, I do recall that.
 MJ: All right. Do you know what that is?
 MEM: I have a basic understanding of it, yes.
 MJ: All right. Would you tell me what your understanding is of a pretrial agreement?
 MEM: Well, basically, that both prosecution and defense have agreed that, for the entry of a guilty plea, some stipulation has been arranged prior to trial for whatever specifications.
 MJ: Do you understand that, in your deliberations in this case, the fact that you are aware that there may or may not be a pretrial agreement in the case—that that is to play no part in your deliberations whatsoever?
 MEM: I understand.

tenant Colonel Harris had testified that he could "be fair and open-minded"; that "he did not understand" the relationship of the pretrial agreement "to the term of confinement"; and that he did not "have any specific knowledge of what the pretrial agreement in the case is."

When defense counsel eventually questioned Lieutenant Colonel Hetzel, he stated that he had "read ... [approximately] the first paragraph" of the Light article and was aware that there was a pretrial agreement. He further indicated that he understood that the agreement contained a sentence limitation. Defense counsel sought to challenge Lieutenant Colonel Hetzel for cause, despite the colonel's contention that he understood the pretrial agreement should play no part in his deliberations. The military judge sustained the challenge for cause.

This action prompted defense counsel to request permission to question Lieutenant Colonel Harris further, which the military judge allowed. Apparently, Lieutenant Colonel Harris was previously aware of the pretrial agreement, and he may have been made aware of the fact that the agreement contained a limitation on confinement by defense counsel's questions.[2] Defense

2. The questioning of Lieutenant Colonel Harris took this form:

MEM: I just recall the fact that it said there was a pretrial agreement. I read it rather hurriedly before I came to work. I do not recall the specific wording.

CDC: In all honesty and candor, Colonel, did you understand it—at least, thinking about it in context—that, whatever the pretrial agreement was, that it, in some way, limited the matter being discussed—that is, the maximum punishment that could be imposed?

MEM: I never really gave it much thought. I just saw what was before me.

CDC: Having had your recollection refreshed, if it has been, does it now, looking back, seem that that is what you read or what it said to you at the time?

MEM: And, again, I must state that I just recall that there was a pretrial agreement, and, again *I read it rather fast and didn't really pay much attention to it.*

CDC: *Did you recall that the article also specified what the maximum punishment might be?*

MEM: *No, I do not.*

CDC: *Did you take the statement—a pretrial agreement was signed by both parties based upon Jobson's guilty plea—in essence, to mean a plea bargain? Is that what you understood it to mean?*

MEM: *No sir, I do not remember thinking that.*

CDC: Again, let me ask you, if you were in Colonel Jobson's seat right now—if you had your druthers, would you want someone that had the information you have sitting in judgment on you?

MEM: I can't answer that question. I'm not in his seat.

CDC: Thank you.

MJ: With respect to the questions the Defense asked, would you state again what your impression was when you read the article of what was, at least, the reporter in that article's version of what was happening?

MEM: Just that a trial was being conducted at Randolph involving a Lt. Colonel, based at Randolph. The individual had, as I recall, pled guilty. I vaguely recall something about a pretrial agreement. Again, I read it rather hurriedly. That's, basically, about what I recall.

MJ: *And you indicated earlier what your assessment was of what a pretrial agreement consisted of. Could you tell us again what that was?*

MEM: *An agreement between the prosecution and defense as to some form of—well, they are in agreement to decide to do something other than to carry out a full trial.*

MJ: *And did you, at that point, relate that to the length of the sentence in the case?*

MEM: *No, I did not.*

MJ: All right. And, based upon what you heard from Counsel and the questions that have been asked to you by myself and Trial Counsel, as well as the Defense Counsel, do you feel that you could still look at this case with an open mind and assess a punishment in the case that is based solely upon the evidence that is presented in Court?

MEM: I believe I can.

MJ: The Defense Counsel asked you a question concerning whether—I think the basic question is whether, if you were the accused in the case, you would want somebody like yourself with a frame of mind like your frame of mind, with an objectivity, or a lack of same, similar to your own, sitting on the Court. And you indicated you couldn't answer that question.

MEM: Well, I would like to think that I have an open mind—that I do not make a decision of that sort until I have all the facts.

MJ: So what is your answer with respect to that question—if you were in the Accused's shoes at this point, and I realize it is difficult for you to place yourself there, would

counsel renewed his challenge of Lieutenant Colonel Harris; and, again, the challenge was denied by the military judge.

Based upon the military judge's denial of the challenge against Lieutenant Colonel Harris, defense counsel requested "an additional peremptory challenge," which also was denied. He then invoked the defense peremptory challenge against Lieutenant Colonel Harris, stating that, if the original challenge for cause had been granted, the peremptory challenge would have been used against yet another colonel.

There are several significant questions raised by this appeal.

First:

— Does a court-martial member's knowledge of a pretrial agreement render him, *per se*, subject to a challenge for cause by either the Government or the defense?

— Indeed, is a member disqualified when he is aware that a pretrial agreement exists?

— If so, is the military judge obliged to excuse the member, *sua sponte*, with or without the consent of the accused?

Second:

— Is an accused entitled to a rehearing if the military judge errs in denying a challenge for cause and the accused properly preserves his challenge in accordance with RCM 912(f)(4), Manual for Courts-Martial, United States, 1984? or

— Can the resulting findings or sentence be affirmed by virtue of harmless error? Art. 59(a), UCMJ, 10 USC § 859(a).

 We will answer these in reverse order. RCM 912(f)(4) was designed to permit an accused to preserve for appeal the correctness of the military judge's denial of a challenge for cause. That rule provides:

When a challenge for cause has been denied, failure by the challenging party to exercise a peremptory challenge against any member shall constitute waiver of further consideration of the challenge upon later review. However, when a challenge for cause is denied, a peremptory challenge by the challenging party against any member shall preserve the issue for later review, provided that when the member who was unsuccessfully challenged for cause is peremptorily challenged by the same party, that party must state that it would have exercised its peremptory challenge against another member if the challenge for cause had been granted.

This rule was adopted in response to the controversy reflected in *United States v. Harris*, 13 MJ 288 (CMA 1982), *see* Drafters' Analysis of RCM 912(f)(4), Manual, *supra* at A21–55, and makes four things clear:

(1) If the accused does not exercise his peremptory challenge *at all*, he waives his objection to denial of his challenge of a member for cause.

(2) If he peremptorily challenges the member whom he has unsuccessfully attempted to challenge for cause and does not state on the record that he would have used his peremptory challenge on some other member, he waives his objection.

(3) He does not waive his objection to the military judge's denial of a challenge for cause if he peremptorily challenges another member.

(4) He does not waive his objection if he peremptorily challenges the member he has unsuccessfully challenged for cause and he states on the record that he would have peremptorily challenged another member if his challenge for cause had been granted.

Applying this rule to the facts of this case, it is clear that the Court of Military Review erred by not following the plain language of RCM 912(f)(4) and its Analysis. Manual, *supra* at A21–55. The accused exercised his peremptory challenge against

(Emphasis added.)

you like to have somebody with your frame of mind sitting on the court-martial panel?
MEM: Well, I believe I would, because I do not believe I have made a decision.

the member he had unsuccessfully challenged for cause. Thus, pursuant to the rule, he preserved his objection for review. If the military judge erred, the accused is entitled to a new hearing on sentence.

We agree with the construction of RCM 912(f)(4) which has been advanced by the United States Army Court of Military Review. *United States v. Moyar*, 24 MJ 635 (1987); *United States v. Anderson*, 23 MJ 894 (1987). We reject the opinion of the United States Air Force Court of Military Review herein that, if an accused elects to remove the objectionable member from the panel, the error can be tested for harmlessness. 28 MJ at 849. To so hold would render the language of RCM 912(f)(4) meaningless and, in every case, would require an accused, *at his peril*, to leave the objectionable member on the panel in order to obtain review of the military judge's ruling on his challenge for cause. *See United States v. Harris, supra* at 293–94 (Everett, C.J., dissenting). This conclusion disposes of the granted issue favorably to the accused. We now turn to the certified issue.

■ The decisive issue is whether the military judge erred in denying the challenge of Lieutenant Colonel Harris for cause. We hold that he did not and answer the certified question in the affirmative.

Two Rules for Courts–Martial govern the situation developed here. RCM 705(e) provides:

Except in a special court-martial without a military judge, no member of a court-martial shall be informed of the existence of a pretrial agreement.

It is of particular note that the rule neither defines the verb "inform" nor, more importantly, does it provide a remedy in the event a member is either *"informed"* of the agreement (presumably by the Government) or inadvertently *learns* of the pretrial agreement through some neutral source, such as a daily newspaper.

RCM 912(f)(1) enumerates 13 specific grounds upon which to challenge for cause and one "catch-all" ground. Whether a member is informed of a pretrial agreement or inadvertently learns about it is *not* one of the enumerated grounds. The "catch-all" ground, RCM 912(f)(1)(N), provides:

(1) *Grounds.* A member shall be excused for cause whenever it shall appear that the member:

\* \* \* \* \* \*

(N) Should not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.

Notwithstanding our sensitivity to the mandate that military judges shall be liberal in granting challenges for cause, *United States v. Smart*, 21 MJ 15, 21 (CMA 1985); *see United States v. Moyar, supra* at 638, the record in this case supports the military judge's finding that Lieutenant Colonel Harris was not subject to a challenge for cause.

The problem of jurors being exposed to information concerning a particular case through pretrial publicity is not a phenomenon unique to the military. The test of whether a particular juror is disqualified is accurately reflected in RCM 912(f)(1)(N). As the Supreme Court views it:

The constitutional standard of fairness requires that a defendant have "a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. [717] at 722 [81 S.Ct. 1639 at 1642, 6 L.Ed.2d 751 (1961)]. Qualified jurors need not, however, be totally ignorant of the facts and issues involved.

*Murphy v. Florida*, 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975).

We see no need to create judicially a fourteenth enumerated ground under RCM 912(f)(1). The rule provides a significant basis for a military judge to excuse a member for "cause" if that member has been either "informed" or "learns" of pretrial negotiations. Judges are often confronted with jurors or members who have acquired some extra-judicial knowledge concerning a case. It is resolution of these difficult and delicate matters that we entrust to the

good judgment of good men and women sitting on the trial bench.

Applying the foregoing principles to the facts of this case, we conclude that the military judge did not abuse his discretion in denying the challenge of Lieutenant Colonel Harris for cause. Thus, the opinion of the United States Air Force Court of Military Review reached the correct result—though for the wrong reason—so the decision below can still be upheld.

The decision of the United States Air Force Court of Military Review affirming the findings and sentence is affirmed.

SULLIVAN, Judge (concurring):

I agree with Judge Cox in this case. However, I disagree with any construction of his opinion which would establish a "great deference" standard with respect to challenges for cause at court-martial. See United States v. Smart, 21 MJ 15, 21 (CMA 1985) (Cox, J., concurring).

First of all, I would note that the policy on freely granting challenges for cause at courts-martial is not judicially mandated. Its origins are executive in nature and grounded in long-standing tradition at courts-martial. See Analysis to RCM 912(f)(3), Manual for Courts–Martial, United States, 1984, at A21–54; para. 62h (2), Manual for Courts–Martial, United States, 1969 (Revised edition); para. 62h (2), Manual for Courts–Martial, United States, 1951; para. 58f, Manual for Courts–Martial, U.S. Army, 1928; see also G. Davis, A Treatise on the Military Law of the United States 88 n. 1 (3d ed. rev. 1913).

Chief Judge Everett properly noted in United States v. Smart, supra at 18–19, the reasons for such a policy. He said:

\* \* \* \* \* \*

The 1969 Manual also specifically directed that a "military judge ... should be liberal in passing on challenges." Para. 62h(2).[1] Nonetheless, our precedents have allowed military judges broad latitude in ruling on challenges for cause. See United States v. McQueen, 7 MJ 281

(CMA 1979). As one appellate court has observed:

There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empaneling of a jury.

United States v. Ploof, 464 F.2d 116, 118–19 n.4 (2d Cir.), cert. denied, 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972).

Despite our respect for the conscientiousness of military judges in ruling on challenges, this Court cannot abdicate its responsibility to assure that military accused are tried by court members who are unbiased as to findings and sentence. Our responsibility is especially great—perhaps greater than that of other appellate courts—because courts-martial peremptory challenges are much more limited than in most civilian courts and because the manner of appointment of court-martial members presents perils that are not encountered elsewhere. Therefore, we do not accept as conclusive a challenged member's perfunctory disclaimer of personal interest or his assertion of impartiality. See United States v. Harris, 13 MJ 288 (CMA 1982). Moreover, we have recognized that under some circumstances bias may be implied—although the concept of implied bias is not to be applied indiscriminately. See United States v. Harris, supra at 292; United States v. Porter, 17 MJ 377, 380 (CMA 1984) [footnote omitted].

[1] While RCM 912(f)(3) of the Manual for Courts–Martial, United States, 1984, does not contain this express language, the analysis of the Rule states that the deletion was "not intended to change the policy expressed in that statement." Page A21–54.

I agree and, therefore, must reject even the suggestion that this Presidential policy may be lightly dispensed with under the guise of broad deference to the judge's discretion. Clearly, this was not the approach of the Court of Military Review in United States v. Moyar, 24 MJ 635 (ACMR 1987), which is relied on by the principal

opinion. *See generally United States v. Reichardt*, 28 MJ 113, 116 n.2 (CMA 1989).

EVERETT, Chief Judge (concurring in part and dissenting in part):

I

I agree fully with Judge Cox that, pursuant to RCM 912(f)(4), Manual for Courts-Martial, United States, 1984, the accused preserved his objection to the denial of his challenge for cause against Lieutenant Colonel Harris. 31 MJ at 120.

II

A

With respect to the certified issue, I also agree with Judge Cox that RCM 705(e) is intended to assure that parties to the trial not inform court-martial members "of the existence of a pretrial agreement." 31 MJ at 121. Presumably, the intent of this requirement is to avoid the possibility that a court member who learns of a pretrial agreement might pay less attention to his duties and assume that the process of sentencing the accused is a useless formality because the parties have already determined what sentence ultimately will be served.

Whether a court member is "informed" of a pretrial agreement by a party to the trial or learns of it in some other way, the effect on his behavior as a court member will probably be the same. In either event, there is a danger that the member will not be attentive enough to his sentencing duties so that his participation in the sentencing will create "substantial doubt as to legality, *fairness, and impartiality.*" *See* RCM 912(f)(1)(N) (emphasis added.) The only difference in the two situations is that, if the trial counsel informs the court members of the pretrial agreement, a defense challenge for cause to the members might appropriately be sustained as a matter of course in order to deter future violations of RCM 705(e) by prosecutors.

Aware that the member's knowledge here of the existence of a pretrial agree-ment might affect adversely his participation in the sentencing proceedings, the military judge carefully questioned Lieutenant Colonel Harris. After scrutinizing this inquiry—which is quoted by the court below and also is set out in the appendix to Judge Cox' opinion—I find it hard to disagree with the military judge's conclusion that Lieutenant Colonel Harris could fairly and impartially participate in sentencing Jobson. The Court of Military Review, however, reached a different conclusion.

If this conclusion were based on the assumption that, when a court member learns of a pretrial agreement, there necessarily is "substantial doubt as to [the] legality, fairness, and impartiality" of any sentence adjudged by that member, I believe the conclusion would be unwarranted. If, however, the United States Air Force Court of Military Review, in the exercise of its supervisory power over the courts-martial whose findings and sentences it reviews, decides to establish a "bright line" rule that a court member who learns of a pretrial agreement must be excused upon challenge for cause, I believe this is permissible.

As I construe its opinion, the Court of Military Review did not even seek to go this far. Instead, upon examination of the *voir dire* of Lieutenant Colonel Harris and pursuant to the repeated exhortation both of this Court and of Manuals for Courts-Martial that military judges should construe challenges for cause liberally, the court below only decided that, because of the knowledge he had acquired, this member's continued service on the court-martial would create "substantial doubt" as to the fairness of the sentence it adjudged.

In my view, this decision was within the statutory power of the Court of Military Review. Admittedly, that court should give some weight to a determination by the military judge that a court-martial member is competent; however, as Judge Sullivan points out, neither Courts of Military Review nor this Court may abdicate their responsibility to ensure a fair trial under

the guise of deferring to the discretion of military judges.

### B

If, after a plea of not guilty, prejudicial error occurs in denying a defense challenge for cause and the error is properly preserved for appellate review, a rehearing as to findings and sentence usually will be necessary because of the difficulty in determining what findings would have been made by the court-martial if the challenge for cause had been sustained.* However, where a guilty plea has been entered and the error concerns only the sentence adjudged, I conclude that the Court of Mili-

tary Review may be able to remedy the prejudicial error by reassessment of the sentence. I would not exclude this possibility, especially when, as in this case, the convening authority already has substantially reduced the sentence adjudged.

### III

Accordingly, I would answer the certified question in the negative and the granted issue in the affirmative; furthermore, I would remand the case to the Court of Military Review to decide whether it can eliminate any prejudice to Jobson through reassessment of his sentence.

---

* Of course, if the challenge for cause concerns suitability for sentencing, its denial would not require any remedy as to findings.