### UNITED STATES

### v.

**Douglas R. ADAMS, 452 31 9319, Aviation Electronics Technician, Second Class (E–5), U.S. Navy.**

**NMCM 92 0249.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 10 Sept. 1991.

Decided 31 March 1993.

---

**1202**

LT Michael C. Pallesen, JAGC, USNR, Appellate Defense Counsel.

LT Randall L. Chambers, JAGC, USNR, Appellate Defense Counsel.

LT Ralph G. Stiehm, JAGC, USNR, Appellate Government Counsel.

Before JONES, Senior Judge, and REED and LAWRENCE, JJ.

LAWRENCE, Judge:

Contrary to appellant's pleas, a special court-martial of officer members convicted him of one specification of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. Appellant was sentenced to reduction to pay grade E–1 and a bad conduct discharge. The convening authority approved the sentence as adjudged.

■ Appellant assigns three errors.[1] The issue in the first assignment of error is

1. I. THE MILITARY ERRED BY PRECLUDING APPELLANT FROM CONDUCTING VOIR DIRE CONCERNING THE MEMBERS' PAST INVOLVEMENT IN THE DRUG URINALYSIS PROGRAM AND THE MEMBERS' BELIEFS REGARDING A SERVICE MEMBER WHOSE SPECIMEN TESTS POSITIVE. [FOOTNOTE OMITTED.]
II. THE COURT–MARTIAL WHICH TRIED THIS CASE HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE WAS NOT APPOINTED TO A FIXED TERM OF OFFICE. *UNITED STATES V. GRAF,* 32 M.J. 809 (N.M.C.M.R.1990), *PETITION GRANTED,* 34 M.J. 169 (C.M.A.1991). WHEREFORE APPELLANT HAS BEEN DENIED DUE PROCESS OF LAW BECAUSE THE ERROR IS JURISDICTIONAL AND THE RECORD CONTAINS NO EVIDENCE OF A KNOWING WAIVER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE IS-

whether the military judge unduly restricted civilian defense counsel from questioning the prospective court members concerning their previous experiences with the drug urinalysis program and any preconceived beliefs regarding the reliability of the program and accuracy of the test results. We conclude that the military judge abused her discretion by precluding reasonable questioning about these subjects. Additional issues are (1) whether appellant waived the error by failing to renew his request for the specific questions during individual voir dire, and (2) whether the error prejudiced appellant. We find that the error was not waived and that it resulted in prejudice to appellant. We set aside the findings and sentence and authorize a combined rehearing.

Prior to voir dire of the prospective court members, civilian defense counsel submitted a list of 26 proposed questions. Fifteen of the proposed questions were directly related to the members' opinions of or past experience with the Navy's urinalysis program.[2] The military judge said that she had incorporated any appropriate questions into the voir dire questions she planned to ask the members. Civilian defense counsel objected to the omission of nearly all of his proposed questions and requested latitude to pursue these specific questions relating to the urinalysis program during individual voir dire. The military judge noted his objection and said she would address the scope of individual voir dire at that point in the trial.

During the military judge's voir dire of all the members, she asked one of appellant's proposed questions concerning whether any member participated in a urinalysis in mid-March 1991, the approximate time of the urinalysis test involved in this case. Her only other question dealing with urinalysis was a 58–word general question asking:

Is there anything about your past, education, training, participation, or experi-

SUE IS NOT WAIVED BY TRIAL DEFENSE COUNSEL'S FAILURE TO RAISE THE ISSUE AT TRIAL.

III. APPELLANT'S COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION.

2. The pertinent questions are listed in order:

3. Do each of you agree that the Navy is obligated to comply with the applicable Navy and Department of Defense regulations, instructions and/or policies and procedures which have been established for urinalysis cases?

4. Has any member participated in or attended any instruction, seminar, command briefing or training session, whether as a student or instructor concerning the urinalysis program?

5. Has any member ever read or reviewed any article, written briefing or other document concerning urinalysis testing for drug identification?

6. Has any member ever participated in a urinalysis collection process as a unit coordinator, observer, or in any other capacity?

7. Does any member have the opinion that the urinalysis program is without flaws or problems?

8. Has any member read or reviewed any information or otherwise been advised of the punishment awarded in previous Court Martials or Masts of personnel of their Command for positive urinalysis?

9. Does any member feel that if a service member comes up positive for cocaine on a urinalysis that person is guilty of use of cocaine?

16. Do any of you disagree with the notion that although an individual has shown to be positive during a urinalysis procedure, that individual may nonetheless be innocent of any wrongdoing?

17. Does any member feel that a positive urinalysis for cocaine raises a presumption that the individual is guilty of using cocaine?

22. Has any member been a party to, or have otherwise heard of any discussion or read any document concerning the fact that AT2 Douglas Adams came up positive on a urinalysis or any related topic?

23. Did any member submit a urine sample at Naval Air Station, Oceana during the period of 15 Mar to 18 Mar 1991?

24. Does any member have the belief that the drug screening laboratory does not make mistakes in the processing and identification of allegedly positive urine samples?

25. Assuming that the government presents evidence reflecting that the collection and the laboratory analysis of the sample in question was conducted in accordance with the applicable regulations and procedures, is there any member who will be looking to the accused explain [sic] how the accused apparently ingested cocaine?

26. Does any member have the opinion that a positive urinalysis, in and of itself is sufficient evidence that the accused used cocaine?

ence, or any other matter involving the Navy's urinalysis collection and testing program which you feel you would not be able to set aside and which would make it difficult or impossible for you to conduct your deliberations in a completely fair, impartial and unbiased manner?

She then listed three members she intended to recall for individual voir dire and asked for counsel's proposed questions to these individuals. Civilian defense counsel again stated that the limited scope of the military judge's voir dire did not provide an adequate basis for individual voir dire concerning their experiences and opinions regarding the urinalysis program. He also contended that he could not intelligently exercise his peremptory challenge without knowing the members' degree of training or experience with the urinalysis program, pointing out that such questions might also lead to a challenge for cause. The military judge noted defense counsel's objection to her failure to ask these specific questions, opined that her questions adequately addressed the area, and instructed the civilian defense counsel that she would not address the members' specific urinalysis experience on individual voir dire.

■ Trial judges have broad discretion to determine the scope of voir dire, and should be reversed on appeal only when a clear abuse of that discretion, prejudicial to the appellant, is shown. *United States v. White,* 36 M.J. 284 (C.M.A.1993); *United States v. Smith,* 27 M.J. 25 (C.M.A.1988). Although the military judge's discretion is broad, nonetheless, the judge must allow the accused that degree of latitude during voir dire which reasonably relates to making an intelligent, informed choice in exercising a challenge for cause or a peremptory challenge. *United States v. Parker,* 6 C.M.A. 274, 279, 19 C.M.R. 400, 405 (1955); *United States v. Smith,* 24 M.J. 859, 892 (A.C.M.R.1987), *aff'd,* 27 M.J. 25 (C.M.A. 1988).

■ Many of the questions proposed by the civilian defense counsel were reasonably related to exposing opinions about the urinalysis program that could be the basis for a challenge for cause, i.e., fixed or inflexible beliefs that the urinalysis system is flawless, that a positive urinalysis equates to guilt, or that a positive urinalysis puts the burden on the accused to show innocence. In addition, other questions concerning the members' past experience or expertise in the urinalysis program could be most relevant in making an intelligent peremptory challenge. The need to allow the accused reasonable latitude in obtaining information for use in making a peremptory challenge is especially important in courts-martial, where only one such challenge is allowed. Indeed, the well-established rule that challenges of members for cause should be liberally granted, *White* at 287; *United States v. Reynolds,* 23 M.J. 292 (C.M.A.1987); *United States v. Smart,* 21 M.J. 15, 18 (C.M.A.1979); *United States v. Baum,* 30 M.J. 626, 629 (N.M.C.M.R.1990); *United States v. Tompkins,* 30 M.J. 1090, 1092 (N.M.C.M.R.1989), would be ineffective if this same standard of liberality were not applied to the questions allowed on voir dire. *Smith,* 24 M.J. at 862. Although some of the civilian defense counsel's proposed voir dire questions may have been objectionable, the failure to ask his relevant questions, without any explanation as to why they would be objectionable or an opportunity for counsel to remedy any objectionable aspects of them, was an abuse of discretion unless the military judge's questions constituted an adequate substitute.

■ The one general question by the military judge concerning whether the members could put aside prior opinions or experiences with the urinalysis program was an inadequate substitute for the specific questions proposed by civilian defense counsel. The court's obligation to provide a reasonable opportunity for counsel to elicit information about bias and preconceived notions that bear on guilt or innocence is not discharged by asking general questions such as, "Do any of you harbor any thoughts or feelings regarding punishments which might affect your ability to award a completely fair, impartial and appropriate sentence." *United States v. Dixon,* 8 M.J. 858, 861 (N.C.M.R.1980), *rev'd on other*

*grounds,* 18 M.J. 310 (C.M.A.1984). Military courts do not accept as conclusive a member's perfunctory disclaimer of personal interest or assertion of impartiality. *See United States v. Berry,* 34 M.J. 83, 87–88 (C.M.A.1992); *United States v. Jobson,* 31 M.J. 117, 122 (C.M.A.1990) (Sullivan, J., concurring); *Smart,* 21 M.J. at 19. Civilian defense counsel should have been allowed to discover the members' past experiences with the urinalysis program to see if they really could be expected to put aside any preexisting opinions or experiences.

■ The government argues that even if there was error in the voir dire procedure, appellant waived the error by failing to attempt to ask his specific questions during the individual voir dire. *See United States v. Yarborough,* 14 M.J. 968, 971 (A.C.M.R. 1982), *aff'd,* 18 M.J. 452 (C.M.A.1984); *Dixon,* 8 M.J. at 861. We find no waiver in this case where civilian defense counsel objected to the limited scope of voir dire before trial, again objected prior to the start of individual voir dire and detailed the subjects into which he would like to inquire, and was specifically told that the military judge would not go into those subjects during individual voir dire.

■ Finally, the government argues that any error was harmless because the prosecution had a strong case and the evidence revealed no irregularities in this particular urinalysis test. Under the government's theory, if a challenge for cause is wrongfully denied or the exercise of a challenge is impermissibly impaired, the court may look at the evidence at trial and conclude, in effect, that any member would have voted to convict, and therefore, the error is harmless. This argument is contrary to the Court of Military Appeals' holding in

*Jobson* that the wrongful refusal of a challenge for cause does not require a showing of prejudice to merit relief. *Jobson,* 31 M.J. at 121.[3] If we may not test for prejudice in a case such as *Jobson* wherein the improperly denied challenge for cause was followed by a defense peremptory challenge of that member, certainly we may not conduct such a test in a case wherein potentially challengeable members sat on the court through findings and sentence.

In support of its proposed harmless error analysis, the government cites *United States v. Heriot,* 21 M.J. 11 (C.M.A.1985). We distinguish *Heriot* on two grounds. First, *Heriot* involved a challenge for cause due to a court member's inflexible attitude as to sentence. The Court emphasized that the basis for challenge did not relate to findings. Second, in holding that the erroneously denied challenge constituted harmless error, the Court considered the relationship between the nature of the inflexibility and the sentence adjudged. In doing so, the Court concluded that the inflexibility had no effect on the adjudged sentence.

In this case, the denial of voir dire had its primary potential effect on findings, not sentence. Furthermore, because civilian defense counsel was prevented from determining whether a court member or members were unduly predisposed towards believing that a positive urinalysis result equates to guilt, we have no way of knowing what strongly-held opinions or impermissible predispositions may have existed. We cannot assess the impact of a known bias against a known result and test for prejudice as could be done in *Heriot.* We have no way of knowing if in voting for a finding of guilty one or more of the members relied in part on a predisposition to-

---

**3.** Although there is a split in the authorities, the Court of Military Appeals' holding that prejudice is not required to earn relief for the improper denial or impairment of the exercise of challenges is supported by several federal circuit courts. *See Knox v. Collins,* 928 F.2d 657, 661 (5th Cir.1991) (citing *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), *overruled on other grounds by Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). *See also United States v. Rucker,* 557 F.2d 1046, 1049 (4th Cir.1977);

*United States v. Lewin,* 467 F.2d 1132 (7th Cir. 1972). *But see United States v. Gelb,* 881 F.2d 1155, 1164 (2d Cir.1989), *cert. denied,* 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989); *United States v. Dennis,* 786 F.2d 1029, 1045 (11th Cir.1986), *rehearing granted in part,* 804 F.2d 1208 (11th Cir.), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987); *United States v. Irwin,* 793 F.2d 656, 667 (5th Cir.1986), *cert. denied,* 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986).

wards believing that the urinalysis program was generally error free and the test results were highly accurate. Based on our judicial experience, we cannot conclude that every court member will vote for a finding of guilty based on a urinalysis report alone, no matter how well procedures are followed. Thus, even were we allowed to test the error for prejudice, we could not say with any certainty that the error was harmless.

The last two assignments of error are without merit. *United States v. Graf*, 32 M.J. 809 (N.M.C.M.R.1990), *aff'd*, 35 M.J.

450 (C.M.A.1992); *United States v. Weiss*, 36 M.J. 224 (C.M.A.1992).

The findings and sentence are set aside. A combined rehearing is authorized. *See* R.C.M. 810(a)(3).

Senior Judge JONES and Judge REED concur.