UNITED STATES, Appellee,

v.

**William J. McCOY, Private First Class,
U.S. Army, Appellant.**

No. 63,230.
CM 8702749.

U.S. Court of Military Appeals.

Argued March 15, 1990.

Decided Sept. 28, 1990.

For Appellant: *Captain Pamela J. Dominisse* (argued); *Colonel Robert B. Kirby* (on brief); *Lieutenant Colonel Russell S. Estey, Captain Timothy P. Riley, Captain Robert C. Wee.*

For Appellee: *Captain Randy V. Cargill* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto* (on brief); *Major Gary L. Hausen.*

## Opinion of the Court

SULLIVAN, Judge:

During the last months of 1987, appellant was tried by a general court-martial composed of officer and enlisted members at Nuernberg, Federal Republic of Germany. Contrary to his pleas, he was found guilty of attempted distribution of amphetamines, conspiracy to distribute amphetamines, wrongful use of amphetamines, wrongful distribution of amphetamines, perjury, solicitation to distribute amphetamines, and two specifications of obstruction of justice, in violation of Articles 80, 81, 112a, 131, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 881, 912a, 931, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 48 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence in a short-form opinion dated July 24, 1989.

This Court granted review of the following issue:

WHETHER THE VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS DENIED HIM A FAIR TRIAL.

We hold that appellant was not denied a fair trial despite the admittedly [1] improper actions of the government agents involved in the investigation and prosecution of his case. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2377–78, 101 L.Ed.2d 228 (1988); *Darden v. Wainwright*, 477 U.S. 168, 180–83, 106 S.Ct. 2464, 2471–72, 91 L.Ed.2d 144 (1986).

The record of trial shows the following motion by defense counsel prior to this court-martial.

Comes now PFC McCoy by and through his Defense Counsel and moves the court for an order Dismissing all charges and specifications with prejudice.

The grounds for requesting this relief is that two separate trial counsels in this matter have violated various rules for courts-martial, rules of evidence and the Uniform Code of Military Justice to such an extent that PFC McCoy has been and will be denied due process of the law if this matter is continued.

Specifically it is alleged that the trial counsel starting in January 1987 advised CID [Criminal Investigation Command] not to advise certain "witnesses" of their rights under Article 31, UCMJ[, 10 USC § 831]; even though it was known that the witnesses possibly would give incriminating statements and that the Government had information in their possession such that the "witnesses" should have been considered suspects. That this course of conduct continued through the entire investigation and even with a change in trial counsels. That the trial counsels interviewed these witnesses without a proper rights advisal. The basis for the trial counsels' action was that the witnesses "would be getting immunity," or words to that effect; and they granted them de facto immunity.

These acts and/or statements by the trial counsels are in violation of RCM 704, M.R.E. 301, Article 98, UCMJ and Article 31, UCMJ.

The right or privilege to grant immunity is personal to the General Court–Martial Convening Authority and cannot be delegated, RCM 704(i). The Trial Counsel is not and cannot be an agent for the GCMCA in these matters; nor can the

---

1. Trial counsel for purposes of resolving the defense motion conceded the Government's failure to properly advise the suspect witnesses. Art. 31, Uniform Code of Military Justice, 10 USC § 831. He also conceded that the previous trial counsels usurped the convening authority's power to grant immunity. *See* RCM 704, Manual for Courts–Martial, United States, 1984. A

copy of an investigation by Office of the Judge Advocate General of the Army has been filed with this Court over defense objection. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2378, 101 L.Ed.2d 228 (1988). For purposes of this appeal, we are bound to consider only the record of trial and the prosecution's concession.

trial counsel tacitly grant immunity. *United States v. Chavez*, 6 MJ 615, 622 (ACMR 1978).

When these matters came to light prior to Article 32[, UCMJ, 10 USC § 832] Investigation the response of Staff Judge Advocate's Office was to arrange for the GCMCA to grant immunity to testify to the two trial counsels and the four CID agents/investigators involved. These actions were discussed at OIC/TC meeting in June and July 1987 in Grafenwoehr and Bamberg, FRG. When it came to light that the Defense was aware of the June discussions, at the July meeting the attendees were informed that the discussions were private and not to be discussed with Defense in any shape or form. This is in violation of the Government's legal and ethical duty to give notice to the Defense of matters that might negate the guilt of an accused. This is also an attempt to close off from the Defense the possibilities of interviewing witnesses when there are allegations of misconduct by the Government and/or its representatives.

It is therefore requested that all charges before the Court be dismissed with prejudice.

In the alternative it is requested that the Government be denied the use of any previous statements of the witnesses below and in that it is not possible to remove the taint from the witnesses, the witnesses themselves.

a. SP4 Coy H. Lasley
b. PFC Michael Brown
c. PFC Kyle Corwin
d. PFC Wayne E. Johnson
e. PFC Christopher D. MacCannell
f. PV2 Conrado Perez
g. MP/DST Richard C. Chiarolanzio
h. SA Dennis Stockwell
i. SA Richard J. McIntyre

Government counsel responded, in part, stating:

1. The accused lacks standing to assert a due process violation of the Fifth Amendment rights (Article 31), specifically the right to be warned, of said witnesses:

[List omitted.]

\* \* \* \* \* \*

2. The due process violations purportedly raised by the accused are based on allegations of trial counsel misconduct. The Government contends that trial counsels' actions, irrespective of their degree of propriety, did not and will not preclude the disposition of a fair trial in the present case.

On further questioning by the military judge, government counsel conceded specific facts as alleged above in defense counsel's motion:

MJ: So you admit the averments by the defense counsel then?

ATC: With regard to the 31 rights warnings, that's correct, that CID was advised not to read—

MJ: —But you're not admitting to closing off the defense's right to interview witnesses?

ATC: No, Your Honor.

MJ: Okay. So, basically, you're—the first two, you're basically agreeing that, in fact, the witnesses—or CID was told not to advise the witnesses of their Article 31 rights and that when those matters came to light prior to the Article 32, the response of the SJA's office was to arrange for the general court-martial convening authority to grant immunity to the trial counsels and the four CID agents, but not to the fact that everybody attempted to cover it up, is that right?

ATC: Yes, Your Honor.

After further argument, defense counsel acknowledged that appellant could not assert others' Article 31 rights but instead contended:

However, we're saying that because of this constant action by the Government and its representatives, there's been a denial of due process which cannot be corrected in this courtroom with a trial, that those witnesses' statements, even if you tell the witnesses, "Okay, we're

throwing those statements out, ignore them, pretend they don't exist," we have a problem.

\* \* \* \* \* \*

If they try and change their story now we're going to have a conflict, which appears to be either a false sworn statement or perjury. So, what has occurred over the last six months has tainted them to such a severe extent there is no way to remove the taint.

Finally, defense counsel presented the testimony of Staff Sergeant John Palmer to show that appellant's First Sergeant, William H. Triplett, had a specific desire to "get rid of" appellant. The Government rebutted with the testimony of Master Sergeant Triplett, who denied having entertained such a specific intent.

Upon the conclusion of this testimony, the military judge heard additional argument from counsel and rendered, in relevant part, the following ruling:

Well, the court's listened to the evidence and the testimony, considered the issues, and I don't think there's any question, and the Government has basically conceded the fact, that for whatever reason they deemed it necessary to trespass all over the 5th Amendment and Article 31 rights of numerous people. However, the court does not, at this point, find that that rises to the level of substantial prejudice to this accused in the sense that he cannot receive a fair trial. I think the defense still has the opportunity to—and various instructions will be given to the court as to their consideration of the testimony of these co-conspirators and co-accused, or whatever, if you will. I think we can fashion certain appropriate instructions to the court to caution them when considering the testimony. I think, also, the fact that the defense has the opportunity to present these matters to the court for consideration in determining what weight, if any, to give to the testimony of these witnesses. But, one problem is, is to presume the prejudice would require a finding or a determination that the original statements to which

the defense believes that the witnesses are locked into were, in fact, fabrications. The court does not so find, or at least it doesn't have the evidence to find, that these were fabrications. I don't perceive that there was any conspiracy to "get" the accused, at least from the unit. I don't know about the trial counsels, but even if that was their intent I don't believe that that rises to the level of a due process violation with respect to PFC McCoy.

Four witnesses challenged by appellant did testify at trial. None of them were specifically asked by the defense whether they would testify differently if their prior unwarned statements did not exist. Nonetheless, testimony of three of the witnesses did contain relevant passages touching upon defense counsel's concerns.

Private First Class MacCannell testified, in relevant part:

[TC]: Now, is everything that you've testified here today—is that the truth?

A: Yes, sir.

\* \* \* \* \* \*

Q: And do you know essentially what [General Leland]'s telling you to do?

A: As long as I tell the truth I have immunity, sir.

\* \* \* \* \* \*

[DC]: So if you were to come in here today, and admit—hypothetically—if you were to come in here today and admit that you lied at that Article 32, you know that you could be prosecuted for that, don't you?

A: That's right, sir.

\* \* \* \* \* \*

[TC]: So you told the truth at the Article 32 hearing?

A: Yes I did, sir.

Q: And are you telling the truth here today?

A: Yes, sir.

Specialist Four Corwin testified, in relevant part:

A: If I don't lie, nothing will be done to me.

[TC]: Okay. Have you been telling us the truth here today?

A:  Yes, sir.

\*     \*     \*     \*     \*     \*

[DC]: So you know that immunity doesn't cover perjury;  right?

A:  Yes, sir.

\*     \*     \*     \*     \*     \*

Q:  So, if you had lied at that 32, and if you came in here and admitted it today, you know that you could be prosecuted for that;  right?

A:  Yes, sir.

Specialist Four Brown testified, in relevant part:

[TC]: And you've consulted counsel regarding that grant?

A:  That's correct.

Q:  What do you understand the impact of your testimony today to have with respect to that grant of immunity?

A:  If I tell the truth there's nothing that can happen to me to be charged with a crime.

Q:  Have you been telling the truth here today?

A:  Yes, I have.  Everything I told is the truth.

---

Appellant claimed at trial that he was a victim of a "witch-hunt." The hunters in his case were two trial counsels, four CID agents, unnamed members of the Office of the Staff Judge Advocate, and certain members of his chain of command. Appellant alleged that these government agents violated Article 31 of the Code and the Fifth Amendment by employing unauthorized promises of immunity to secure unwarned statements from seven drug suspects whose statements incriminated him.[2] He then asserted that the members of the

conspiracy agreed to cover-up this purposefully illegal conduct or prevent its discovery by the defense.  Finally, he contended that the prosecutors "locked in" the witnesses to these illegally secured statements by having the convening authority later grant them limited immunity for their testimony at his Article 32 investigation and trial.  Appellant pointed out that any departure from the earlier unadvised statements in these witnesses' Article 32 testimony or their trial testimony could still give rise to a charge of perjury.

Defense counsel at trial particularly asserted that the charges should be dismissed or other relief granted to him without regard to actual prejudice.  He contended that such a remedy would "ensure that the Government understands the seriousness of their actions and what they did was wrong."  In the alternative, he asserted that appellant suffered prejudice as a result of the Government's misconduct.  He claimed that the witnesses who gave unadvised statements implicating appellant were "locked" into these stories and their subsequent testimony should be considered coerced.  Appellate defense counsel renews these arguments before this Court.

■  The defense's initial contention urging automatic reversal misconstrues the function of appellate review.  Article 59(a), UCMJ, 10 USC § 859(a), requires a showing of prejudice before convictions can be set aside for legal error.  Absent a presumption of prejudice (*see Bank of Nova Scotia v. United States*, 108 S.Ct. at 2375), dismissal on the basis of prosecutorial misconduct without regard to the impact of this conduct on appellant's trial cannot be countenanced.  *Id.; United States v. Mechanick*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76

**2.** Article 98, UCMJ, 10 USC § 898, states:

*§ 898. Art. 98.  Noncompliance with procedural rules*

Any person subject to this chapter who—

(1) is responsible for unnecessary delay in the disposition of any case of a person accused of an offense under this chapter;  or

(2) knowingly and intentionally fails to enforce or comply with any provision of this chapter regulating the proceedings before, during, or after trial of an accused;

shall be punished as a court-martial may direct.

*See also* Art. 77, UCMJ, 10 USC § 877.

L.Ed.2d 96 (1983); *Smith v. Phillips*, 455 U.S. 209, 220 n. 10, 102 S.Ct. 940, 947 n. 10, 71 L.Ed.2d 78 (1982).

■ In this light, the next question we must confront is whe ther a presumption of prejudice is appropriate in this case. *See Bank of Nova Scotia v. United States, supra; Rose v. Clark*, 478 U.S. 570, 578–79, 106 S.Ct. 3101, 3106–07, 92 L.Ed.2d 460 (1986). · Were the proceedings so fundamentally unfair that the search for specific prejudice may be foregone? *Id.; see also Moran v. Burbine*, 475 U.S. 412, 433–34, 106 S.Ct. 1135, 1147, 89 L.Ed.2d 410 (1986); *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The defense contends that the sheer breadth of the Government's misconduct in terms of the number of unadvised witnesses and its repetition for each witness dictates automatic reversal. We disagree and note that the *per se* reversal rule for coerced confessions by an accused is not applicable in this case. *See Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958). Moreover, in view of the timely discovery of these prosecutorial shenanigans and the ample opportunity proffered counsel to explore their effect at the pretrial hearing and at trial, we see no inherent difficulty in assessing prejudice or harm. *See Rose v. Clark, supra*, 478 U.S. at 579 n. 7, 106 S.Ct. at 3107 n. 7.

The core of appellant's specific-prejudice argument is that coerced testimony was presented at his court-martial and formed the basis of his conviction. He refuses to speculate concerning the truth or falsity of this compelled testimony. Instead, he focuses on the unlawfulness of the prosecutorial conduct that induced it and the impossibility of securing untainted testimony subsequent thereto. In sum, he claims the trial testimony of the witnesses against him was not voluntary, and its truth or falsity could never be reliably determined.

■ An involuntary confession by an accused is not admissible in his criminal trial for the offenses to which he confessed. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). An unadvised confession by a suspect is likewise not generally admissible to show that person is guilty of the admitted offenses. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In both situations an accused can object to admission of his own statements at his criminal trial and, if they are found to be involuntary or unadvised, this evidence would be suppressed. *See* Art. 31; Mil.R.Evid. 304, Manual for Courts–Martial, United States, 1984. Appellant complains that a similar remedy needs to be fashioned for coerced or unadvised statements or testimony of other witnesses.[3]

■ Unfortunately for appellant, the same remedy for coerced confessions does not apply with respect to coerced or unadvised statements from witnesses which incriminate someone else. *See United States v. Little*, 753 F.2d 1420, 1441 (9th Cir.1984); *United States v. Salinas–Calderon*, 728 F.2d 1298, 1302 (10th Cir.1984); *Long v. United States*, 360 F.2d 829, 834 (D.C.Cir. 1966). Instead, evidence of coercive or illegal investigatory tactics employed by the Government to secure such evidence or subsequent testimony based thereon may be presented to the factfinder for purposes of determining the weight to be afforded this evidence. *See generally* 3 Wigmore, *Evidence* § 815 (Chadbourn rev.1970). Defense counsel in appellant's case was pro-

---

**3.** The witnesses were responsible for the truth or falsity of their unadvised statements to the criminal investigators. *See* Mil.R.Evid. 304(b)(1), Manual, *supra; see generally Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). However, after proper advice, they could have refused to answer the investigators' questions until lawful and adequate immunity was given to them. (See n. 4, *infra*.) At that point they would have no right to refuse to answer the questions of the investigators. Accordingly, the subsequent grants of immunity in this case did not technically lock these witnesses into their unadvised statements. *See generally United States v. Friederick*, 842 F.2d 382, 394 n.16 (D.C.Cir.1988).

vided a full opportunity to present these matters through cross-examination, the calling of witnesses, and argument.[4] Accordingly, we find no unfair trial occurred in this case. *See United States v. Thomas,* 22 MJ 388 (CMA 1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *see generally Darden v. Wainwright, supra.*

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

COX, Judge (concurring in the result):

I concur in the result because in my view appellant lacks standing to suppress the unwarned confessions of witnesses against him. *United States v. Castillo,* 615 F.2d 878, 884 (9th Cir.1980); Art. 31(d), Uniform Code of Military Justice, 10 USC § 831(d).

---

**4.** Under the terms of the actual grants of immunity the witnesses' testimony at the Article 32 Investigation or at trial could be used to show their initial unadvised statements were false. *See* RCM 704(b). Under Mil.R.Evid. 304(b)(1), the unadvised statements could be used to show that subsequent testimony at the Article 32 investigation or at trial was false. *See United States v. Lopez–Martinez,* 725 F.2d 471, 476 (9th Cir.), *cert. denied,* 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984). The proper procedure in this case would have been to grant the witnesses transactional immunity for any falsehoods in their earlier unadvised statements and testimonial immunity for future testimony. RCM 704(a). However, no witness complained of this omission or fear of prosecution for any falsehoods in their initial unadvised statements.