### UNITED STATES

v.

**Trent T. PRITCHETT, 246–06–9768, Quartermaster First Class (E–6), U.S. Navy.**

**NMCM 96 01212.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 9 June 1994.

Decided 22 April 1998.

Joseph W. Kastl, Civilian Defense Counsel.

LT Steven B. Fillman, JAGC, USNR, Appellate Defense Counsel.

LCDR Patricia M. Sulzbach, JAGC, USN, Appellate Defense Counsel.

LT J. Russell McFarlane, JAGC, USN, Appellate Government Counsel.

LCDR David M. Yesh, JAGC, USNR, Appellate Government Counsel.

Before LUCAS, Senior Judge, and OLIVER and LEO, Appellate Military Judges.

OLIVER, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of forcible sodomy of a child under the age of 16, and two specifications of indecent liberties with that child, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1994)[hereinafter UCMJ].[1] His sentence included confinement for 4 years, forfeiture of $500.00 pay per month for 4 years, reduction to the lowest enlisted paygrade, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

We have examined the record of trial, the 14 assignments of error,[2] an "invited issue" concerning the nearly 4 years required for the post-trial processing of this case,[3] and the Government's response. We also heard oral argument on Assignments of Error II, VI,

1. The members acquitted the appellant of two specifications of taking indecent liberties with another one of his stepdaughters.

2. I. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT TO NCIS WHERE: (1) APPELLANT'S ARTICLE 31(B) RIGHTS WERE VIOLATED IN THAT THE NCIS AGENTS FAILED TO ADVISE HIM WHAT OFFENSES HE WAS SUSPECTED OF COMMITTING; (2) HE HAD NOT SLEPT IN OVER 30 HOURS; (3) THE NCIS AGENTS WHO OBTAINED THE STATEMENT REPEATEDLY THREATENED HIS CAREER WITH REFERENCES TO THE CHIEF OF STAFF OF SUBMARINE GROUP TEN; (4) THE NCIS AGENTS USED IMPROPER INDUCEMENTS TO OBTAIN THE STATEMENT FROM APPELLANT; AND (5) THE ADMISSION TO CHARGE II, SPECIFICATION 3 WHICH WAS CONTAINED IN APPELLANT'S NCIS STATEMENT WAS NOT ONLY UNCORROBORATED, BUT WAS CONTRADICTED BY THE EVIDENCE THAT THE ALLEGED VICTIM WAS STAYING WITH HER NATURAL FATHER IN ANOTHER STATE AT THE TIME OF THE ALLEGED OFFENSE.
II. THE MILITARY JUDGE ABUSED HIS DISCRETION IN APPLYING THE "LIBERAL GRANT MANDATE" FOR CHALLENGES FOR CAUSE WHEN HE DENIED THE DEFENSE CHALLENGE FOR CAUSE TO A FORMER NCIS AGENT WHERE THE PIVOTAL ISSUES IN THIS CASE WERE THE RELIABILITY OF THE STATEMENT OBTAINED BY NCIS AND THE CREDIBILITY OF THE NCIS AGENTS WHO OBTAINED THE STATEMENT[.]
III. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED THE CHARGED OFFENSES[.]
IV. THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE REFUSED TO EXCLUDE EVIDENCE OF UNCHARGED PHYSICAL ABUSE WHICH TRIAL DEFENSE COUNSEL OBJECTED TO IN A MOTION IN LIMINE[.]
V. THE MATERIAL RIGHTS OF APPELLANT WERE SUBSTANTIALLY PREJUDICED WHERE THE TRIAL COUNSEL ENGAGED IN PROSECUTORIAL MISCONDUCT BY: 1) REPEATEDLY ELICITING INADMISSIBLE EVIDENCE; 2) SUGGESTING INADMISSIBLE DOUBLE HEARSAY, TRIPLE HEARSAY, AND UNCHARGED MISCONDUCT IN HIS QUESTIONS; AND 3) TELLING THE MEMBERS THEY HAVE A DUTY TO FIND APPELLANT GUILTY OF THE CHARGED OFFENSES.
VI. IN VIOLATION OF ART[ICLE] 41(c), UCMJ, THE MILITARY JUDGE DENIED QM1 PRITCHETT HIS RIGHT TO PEREMPTORILY CHALLENGE NEW COURT MEMBERS.
VII. THE MILITARY JUDGE FATALLY ERRED BY DENYING THE DEFENSE MOTION TO SUPPRESS STATEMENTS MADE TO FAMILY SERVICES DURING THE TIMEFRAME OF 1–8 APRIL 1993. BY 1 APRIL, FAMILY SERVICES INQUIRIES HAD MERGED WITH AN ONGOING NCIS INVESTIGATION INTO AN INDIVISIBLE ENTITY.
VIII. APPELLANT WAS DENIED CONSTITUTIONAL CONFRONTATION WHEN *TWO* ALLEGED CHILD–VICTIMS WERE PERMITTED TO TESTIFY FROM ANOTHER ROOM.
IX. THE MILITARY JUDGE ERRED IN EXCUSING LT M FROM THE PANEL IN RESPONSE TO A PROSECUTION CHALLENGE.
X. THE MILITARY JUDGE ERRED BY FAILING TO GRANT A MISTRIAL AFTER LT H PERSONALLY ENDORSED NCIS PRACTICES DURING DELIBERATIONS.
XI. THE MILITARY JUDGE ERRED IN PERMITTING 'BAD MAN'—AND 'BAD FAMILY'—EVIDENCE OF PHYSICAL ABUSE TO BE INTRODUCED BEFORE THE MEMBERS.
XII. THE MILITARY JUDGE GAGGED FINDINGS ARGUMENT IN THIS COMPLEX CASE BY IMPOSING ARTIFICIAL TIME LIMITS.
XIII. THE CUMULATIVE EFFECT OF A PLETHORA OF ERRORS DENIED QM1 PRITCHETT A FAIR TRIAL.
XIV. THE MILITARY JUDGE FATALLY ERRED BY REFUSING THE DEFENSE THE RIGHT TO SHOW THAT—CONTRARY TO THEIR IN–COURT TESTIMONY—NCIS AGENTS EMPLOYED SIMILAR SUSPECT TACTICS WITH OTHER SUBJECTS.

3. INVITED ISSUE: THE APPELLANT MISSED HIS CHANCE FOR PAROLE BECAUSE OF THE INORDINATE DELAY IN POST–TRIAL PROCESSING OF HIS CASE. (Citations omitted.)

and X, and on two subsidiary questions the court had posed.[4] After careful consideration, we conclude that the military judge erred to the prejudice of the appellant by denying him his statutory right to peremptorily challenge one of the new court members added when the original panel (as supplemented) had fallen below quorum. Since we conclude that this error entitles the appellant to have the findings and sentence set aside, we will not address the other issues.

## Relevant Facts

After discussing his options with the military judge, the appellant chose to be tried before a general court-martial composed of officer members. Because of granted challenges for cause and peremptory challenges both the Government and the appellant exercised, the panel twice fell below quorum. The convening authority subsequently appointed seven more officers to supplement the panel. After the third *voir dire* process, the appellant challenged four of the officers for cause. The military judge granted two of the appellant's challenges, but denied the other two.

After resolving the causal challenges, the military judge stated that he would deny both parties any further peremptory challenge. "Alright, counsel," he advised, "I'm not giving you preemptory [sic]. We've got enough challenges in this case. We'll stick with what we've got." Record at 529. The military judge was obviously annoyed with both of the defense counsel, who had shown up 15 minutes late to an earlier session, and was concerned with further delay. Record at 530. The appellant's individual military counsel (IMC) then argued, "it seems that justice is getting lost." *Id.* Without naming any individual or giving any explanation as to why he thought a peremptory challenge was necessary, he nonetheless strongly implied that he wished to exercise a peremptory challenge. The military judge understood this to mean that the appellant was objecting to being denied the opportunity. *Id.* The military judge then said: "I don't want to hear anymore argument about it. I ruled." Record at 531.

After the lunch recess, the military judge stated that the reason he was denying both sides their normal right to exercise peremptory challenges was because he considered that they had come up with a "fair panel" and that peremptory challenges were "not necessary." *Id.* Reaffirming his view that the decision was "discretionary," the military judge then asked the appellant if he had "[a]nything else you want to say" about his ruling. The IMC responded, "No, sir." *Id.*

## Denial of His Statutory Right to a Peremptory Challenge

In his sixth assignment of error, the appellant contends that he is entitled to have the findings and the sentence set aside because the military judge denied him his statutory right to an additional peremptory challenge of court members not previously subject to such a challenge. Art. 41(c), UCMJ, 10 U.S.C. § 841(c). After careful consideration of the relevant facts, we agree that the appellant is entitled to this remedy. Because this is a case of first impression, we will explain our reasoning in some detail.

Article 41(c), UCMJ, 10 U.S.C. § 841(c) provides: "Whenever additional members are detailed to the court, and after any challenges for cause against such additional members are presented and decided, each accused and the trial counsel are entitled to one peremptory challenge against members not previously subject to peremptory challenge." The military judge specifically denied the appellant this statutory right. The Government concedes that this was error. As a result of this error, five of the eight members who determined the appellant's guilt were not subject to a peremptory challenge.

Although the right of peremptory challenge does not derive from the Constitution, it has long been an important tool for ensuring a fair trial, both in fact and appearance.

---

4. The court specifically asked the parties to address: (1) "the question of whether the military judge's decision to deny the appellant his statutory right to peremptorily challenge new court members materially prejudiced the appellant's substantial rights" as raised in Assignment of Error VI; and (2) "the applicability of Military Rule of Evidence 606(b) to the discussion" of Assignment of Error X. Court Order of 26 Jan. 1998.

*See Georgia v. McCollum,* 505 U.S. 42, 57, 112 S.Ct. 2348, 2357–58, 120 L.Ed.2d 33 (1992); *United States v. Carter,* 25 M.J. 471, 474 (C.M.A.1988). Over a century ago the Supreme Court declared that such challenges were "one of the most important of the rights secured to the accused." *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). *See Lewis v. United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892)("an essential part of the trial"). More recently, Justice Scalia, writing for the Court in *Holland v. Illinois,* 493 U.S. 474, 482, 110 S.Ct. 803, 808, 107 L.Ed.2d 905 (1990), suggested that the Sixth Amendment's "requirement of an 'impartial jury' impliedly compels peremptory challenges...."

"The function of the [peremptory] challenge is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise." *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), *overruled on other grounds, Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[5] Another vital purpose of the peremptory challenge is to assure criminal defendants of the fairness of the jury that will decide their case. *United States v. Annigoni,* 96 F.3d 1132, 1137 (9th Cir.1996)(en banc). In discussing the importance of the peremptory challenge over 200 years ago, Blackstone declared: "[T]he law wills not that [an accused] should be tried by any one man against whom he has conceived a prejudice, even without being able to assign a reason for such dislike." *Id.* (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES 353 (1st ed. 1769)). The military has also long recognized the importance of selecting a panel of members which is perceived as fair by all concerned. As our higher court held 44 years ago: "The accused has the statutory right to have his innocence determined and his punishment imposed by a court composed entirely of members whose qualifications meet the standards of eligibility as set forth in the Code and the Manual. A denial of that right is prejudicial." *United States v. Moore,* 4 C.M.A. 675, 678, 16 C.M.R. 249, 252, 1954 WL 2448 (1954).

Article 41, UCMJ, 10 U.S.C. § 841, provides for both causal and peremptory challenges. RULE FOR COURTS-MARTIAL 912, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), sets forth the procedures for determining the background information, conducting the *voir dire* process, and challenging members. "[T]he right to peremptory challenge is an important codal right." *United States v. Harris,* 13 M.J. 288, 292 (C.M.A.1982)(finding no prejudice "because of the lack of any evidence in the record that appellant otherwise desired to exercise this right."). R.C.M. 912(g) provides the mechanics for exercising peremptory challenges.

The appropriate remedy for denial of this important right also has a long history. For over a hundred years (and in many jurisdictions still) the only remedy for the denial of the right to a peremptory challenge was automatic reversal; the aggrieved party need show no prejudice before obtaining relief. *Annigoni,* 96 F.3d at 1136–37 (citing cases). "[E]very other circuit to address this issue agrees that the erroneous deprivation of a defendant's right of peremptory challenge requires automatic reversal." *Id.* at 1141. In his supplemental briefs and during oral argument, the appellant relied on *Annigoni* for the proposition that this error entitles him to "automatic reversal." *Id.* at 1141, 1147. *See also United States v. Jobson,* 31 M.J. 117, 121 (C.M.A.1990).

The Government argues that such a draconian remedy is inappropriate for the military judge's mistake in this case and out-of-step with the more enlightened and modern "harmless error" approach to legal errors

---

5. The instant case is unique because there was no legal justification whatsoever for the denial of the right to exercise the peremptory challenge. Unlike in most recent cases in which the accused objects to the denial of his statutory right to exercise a peremptory challenge, it was not because of any concern about an unconstitutional race- or gender-based challenge. *See, e.g., United States v. Witham,* 47 M.J. 297, 300–03 (1997)(citing cases), *cert. denied,* —— U.S. ——, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998). It was simply based on an erroneous view of the law exacerbated by a perceived time crunch.

during the processing of courts-martial. *See United States v. Underwood,* 130 F.3d 1225, 1231 (7th Cir.1997)(denial of petition for rehearing and suggestion for rehearing *en banc* )(Easterbrook, J., dissenting). The plain language of Article 59(a), UCMJ, 10 U.S.C. § 859(a), supports the Government's argument: "A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." The Federal courts have a similar rule which provides that an appellate court should "disregard" any error which does not affect "substantial rights." FED. R.CRIM.P. 52(a); *see Underwood,* 130 F.3d at 1226 (Easterbrook, J., dissenting). In *United States v. Horsman,* 114 F.3d 822, 825 (8th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998), the court concluded, without substantive discussion of the facts or the precedents, that to prevail on appeal on the issue of an improper denial of the defendant's right to a peremptory challenge, the defendant bears "the burden of showing that the jury which did sit was biased."

■ Our review of analogous opinions of the Supreme Court and the Court of Appeals for the Armed Forces leads us to conclude that *per se* rules, which require reversals for certain mistakes of law, are no longer favored. Appellate courts increasingly apply a harmless-error analysis before deciding to grant an appellant relief. *Compare United States v. Turner,* 47 M.J. 348, 350 (1997), *with United States v. Dean,* 20 C.M.A. 212, 215, 43 C.M.R. 52, 55, 1970 WL 7427 (1970). *But see United States v. Moseley,* 35 M.J. 481, 484 (C.M.A.1992)(plurality opinion). In *United States v. McCoy,* 31 M.J. 323, 327 (C.M.A.1990), our superior court noted that "[t]he defense's initial contention urging automatic reversal misconstrues the function of appellate review. Article 59(a), UCMJ, 10 U.S.C. § 859(a), requires a showing of prejudice before convictions can be set aside for legal error." Normally, therefore, the appellant must be able to establish some prejudice before he is entitled to relief.

We note that, in spite of this court's specific request, the appellant has not even attempted to argue that he suffered any actual prejudice to his substantial rights as a result of the military judge's error. Instead, he relies largely on his position that the military judge's error entitles him to "automatic reversal" of his conviction. When pressed during oral argument, he was unable to make much of a case for actual prejudice. His counsel simply argued that there were at least two members of the panel whom he had challenged for cause and, therefore, did not want to have sit in judgment of him. For its part the Government has argued that harmless error is the standard of review and that, after applying that test, the appellant is entitled to no relief.

■ We conclude that the Government is correct that automatic reversal is not appropriate merely because the military judge denied the appellant the right to peremptorily challenge the new members. That does not mean, however, that the burden is on the appellant to establish specific prejudice. As noted above, the Government cited *McCoy* for the proposition that "automatic reversal" is inappropriate in most cases. However, the full essence of our superior court's position was substantially different than the Government implied it its brief. The court stated in *McCoy:* "**Absent a presumption of prejudice** ..., dismissal .... cannot be countenanced." *McCoy,* 31 M.J. at 327 (citation omitted)(emphasis added). In *United States v. Cooper,* 35 M.J. 417, 422 (C.M.A.1992), the court observed that "the harmless-error rule should be applied unless there is no reasonable alternative to dismissal."

On the facts of this case we have no difficulty presuming prejudice and are hard-pressed to justify any reasonable alternative to dismissal. As our superior court observed: "The reason prejudice is presumed from such an error of law is that this Court has no way to determine how the ineligible member voted or whether his vote may have controlled the sentence imposed by the court." *United States v. Lenoir,* 13 M.J. 452, 453 (C.M.A.1982). In *United States v. Jefferson,* 44 M.J. 312, 322 (1996), in a case when the judge abused his discretion by failing to allow counsel to reopen *voir dire,* our higher court held: "Because of the potential impact

of this abuse on the right to a trial by impartial members, corrective action is required." In *United States v. Adams,* 36 M.J. 1201, 1205–06 (N.M.C.M.R.1993), this court set aside the findings and sentence because the military judge had erroneously refused to reopen *voir dire* to enable the civilian trial defense counsel to ask the members about their predisposition to believe that a positive urinalysis result necessarily equates to guilt. Recently, in *United States v. Giles,* 48 M.J. 60 (1998), our higher court determined that the military judge had abused his discretion in refusing to grant a causal challenge to a member who demonstrated an inelastic attitude on sentencing. Even though that officer never served on the panel because he was the subject of a peremptory challenge, the fact that the accused lost his right to exercise his peremptory challenge against another member, as he had indicated he desired to do, was sufficient prejudice to entitle him to a rehearing. *Id.* See R.C.M. 912(f)(4).

■ After reviewing the relevant appellate decisions, we conclude that this court should apply the following analytical steps to resolve issues of this kind:

(1) Determine whether or not there was error;

(2) If so, presume that the error was prejudicial;

(3) Determine if the record rebuts the presumption of prejudice such that there is no reasonable possibility that it adversely affected the findings or sentence; and

(4) If not, grant relief by setting aside the findings and sentence, as appropriate, and authorize a rehearing.

■ On the instant facts, there was an obvious error in denying the appellant his statutory right to a peremptory challenge. Art. 41(c), UCMJ, 10 U.S.C. § 841(c). The military judge erroneously thought that the decision whether to grant additional peremptory challenges was "discretionary." Record at 531; *see* Record at 530 ("Cause it was in my discretion."). Under the plain language of the statute, it was not discretionary at all. Moreover, under the case authority and the analysis above, we presume it to be prejudi-

cial. *See Lenoir,* 13 M.J. at 453; *Moore,* 4 C.M.A. at 678, 16 C.M.R. at 252.

The third analytical step is to determine if the record rebuts the presumption of prejudice adequately. It might be possible that the military judge's error would be so "trivial" that it would be inappropriate to set aside the findings and sentence. *See United States v. Anderson,* 25 M.J. 342, 344 (C.M.A. 1987); *see also United States v. Jordon,* 44 M.J. 847, 850 (N.M.Ct.Crim.App.1996). For example, had the evidence of guilt been absolutely overwhelming, such that we could not imagine how any reasonable member could have reached any other conclusion than that of guilt, we might conclude that the record adequately rebutted the presumption of prejudice. However, that is not the case here. And even if the evidence of guilt were overwhelming, we are left to speculate as to the possible adverse impact of the member against whom the appellant would have exercised his peremptory challenge in determining an appropriate sentence.

Another way by which the record could rebut the presumption of prejudice is if an accused forfeited the error by declining to object or waived the error affirmatively. *See United States v. Olano,* 507 U.S. 725, 733–34, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993). For example, an accused might decide to affirmatively waive or forfeit by silence his right to peremptorily challenge a member so that the case would be tried before eight members, rather than six. (This is the likely result were an accused in the appellant's situation to exercise a peremptory challenge and then the Government exercised its right to such a challenge.) Another possible way in which we would conclude that the record rebutted the presumption of prejudice is if an accused had initially objected to the denial of the right, but then told the military judge that he would not have exercised the peremptory challenge had he been given the opportunity or stated that he was fully satisfied with the panel.

However, in this case, the appellant did object and gave every indication that he desired to exercise his right to challenge a member. The military judge then specifically ruled against him. Record at 531. Al-

though the phrasing of the objection was not very artful and he failed to cite the applicable statute, 10 U.S.C. § 841(c), we find that the objection was sufficiently specific to focus the military judge's attention and give him an opportunity to rule correctly. Moreover, while the appellant did not specify a member on the panel as the target of his peremptory challenge, we have no difficulty concluding that he would have exercised his right if given the chance. The appellant had just been denied two challenges for cause which he had asked the military judge to grant.[6] Thus, there were at least two members of the panel whom the appellant did not want to sit in judgment of him.

After going through each of these analytical steps, we conclude that the appellant is entitled to relief.

Finally, we are concerned with the perception of unfairness which necessarily results from the military judge's arbitrary and unjustified denial of this appellant's statutory right. The appellant was present when the military judge denied his request to exercise his right to peremptorily challenge a member. The military judge's decision was apparently based at least partially on pique, stemming from the fact that the appellant's two counsel were 15 minutes late to an earlier session. The appellant may have perceived that he was being punished for throwing off the trial's timetable. Without each accused having unquestioned assurance that his or her trial will be conducted in complete compliance with applicable law and regulation, our system fails. Perception of injustice becomes reality, and such a reality destroys the basis of the universal respect for good order and discipline which remains the cornerstone of the military justice system. *See United States v. Dale*, 42 M.J. 384, 386 (1995)(noting the importance of preserving the "perception or appearance of fairness of the military justice system.").

This assignment of error has merit. Accordingly, we set aside the findings and the sentence. The record of trial is returned to the Judge Advocate General for further action consistent with this opinion. A rehearing may be ordered.

Senior Judge LUCAS and Judge LEO concur.

---

6. We do not question the military judge's rulings on these two challenges for cause.